IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 11-cv-01765-REB-BNB

YAO-HUNG HUANG, and
BIG TIME AUTO PARTS MANUFACTURING, INC., a Taiwan Corporation,

     Plaintiffs,

v.

MARKLYN GROUP INC., d/b/a ALPENA, a Canada corporation,

     Defendant.

---

## FINAL PRETRIAL ORDER

---

## 1. DATE AND APPEARANCES

A combined Trial Preparation Conference and Final Pretrial Conference is set for July 11, 2014, at 3:00 p.m., in courtroom A1001, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, CO 80294.

Plaintiffs Yao-Hung Huang ("Mr. Huang") and Big Time Auto Parts Manufacturing, Inc. ("Big Time") (collectively, "Plaintiffs"), will be represented by Aaron P. Bradford and Alexander C. Clayden, of Lathrop & Gage LLP, 950 17th Street, Suite 2400, Denver, CO 80202.

Defendant Marklyn Group Inc., d/b/a Alpena ("Marklyn") will be represented by James A. Jablonski, of the Law Office of James A. Jablonski, 1801 Broadway, Suite 1100, Denver, CO 80202.

## 2. JURISDICTION

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), as this case concerns claims of patent infringement.  No party objects to the Court's jurisdiction.

## 3. CLAIMS AND DEFENSES

a.      **Plaintiffs' Claims:**

Plaintiffs assert a claim for patent infringement against Marklyn.  Mr. Huang created, designed and invented an ornamental design for a flexible attachment strip having a plurality of LEDs mounted thereon, and was issued United States Patent No. D614,780 on or about April 27, 2010 ("the '780 Patent").  While the '780 Patent was in prosecution, Mr. Huang and Big Time advised Marklyn in writing of Mr. Huang's claim for design patent protection and demanded that Marklyn refrain from manufacture or sale of any infringing products.  Upon issuance of the '780 Patent, Plaintiffs provided Marklyn with a copy of the patent and advised Marklyn that certain of its automotive aftermarket lighting products infringe the '780 Patent.  Even so, Marklyn, itself and through its respective divisions, subsidiaries and/or agents, is engaged in the business of manufacturing, marketing, distributing and selling flexible LED attachment strips that infringe the '780 Patent.  In particular, Marklyn manufactures, distributes and/or sells products employing a design which is the same as, or substantially similar to, the design disclosed in the '780 Patent including, without limitation, Marklyn part numbers 77015, 77016, 77017, 77018, 77223, 77512, 77513 and any products sold as combinations thereof (collectively, the "Accused Products").

The evidence presented at trial will establish that, more likely than not, an ordinary observer would be deceived into believing that Marklyn's Accused Products are substantially the same as the design shown in the '780 Patent. Neither the presence of a clear silicone weather protective coating, nor Marklyn's misstatements as to the appearance of its accused products preclude infringement.

Marklyn's position that a clear weather-protective coating found on the articles it manufactures precludes infringement is incorrect. Such weather-protective coating is ubiquitous among flexible LED strip products, and is an aspect of the article of manufacture rather than a design element. Under settled design patent law, it "is assumed that the claim has been crafted to protect that which the applicant 'regards as his invention.'" MPEP § 1504.04 (quoting *In re Zahn*, 617 F.2d at 204). "Therefore, when visible portions of the article embodying the design are not shown, it is because they form no part of the claim to be protected." *Id.* A claimed design may be for a portion of an article of manufacture, rather than the entirety of the article. MPEP § 1502. That is exactly the circumstance here. The '780 patent claims the ornamental design it depicts, and Marklyn's addition of a clear coating is irrelevant to its infringement, which arises from its misappropriation of the '780 Patent design for use on its Accused Products. Features of an article that are not part of the claimed design "may not serve as a valid basis for comparison in a design patent infringement analysis." *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993).

An ordinary observer would find Marklyn's Accused Products substantially the

same as the '780 Patent design with or without regarding to the presence of a clear weather-protective coating or the addition of 3M adhesive tape.  Such aspects of the article of manufacture are not part of the ornamental design claimed and are irrelevant to the infringement analysis.  Moreover, the clear coating and tape backing do not change the appearance of Marklyn's accused products.  Rather, as marketed to consumers, Marklyn's products appear just like the design claimed in the '780 patent. Thus, Marklyn cannot avoid infringement merely by coating its LED strips with clear glue or silicone or adding adhesive tape.

To the extent Marklyn claims that there are any other differences between its Accused Products and the design shown in the '780 Patent, such differences are at most minor.  Any minor differences perceived by Marklyn or its expert witnesses cannot preclude a finding of infringement. *Crocs, Inc. v. International Trade Comm'n*, 598 F.3d 1294, 1304-06 (Fed. Cir. 2010); *Gorham v. White*, 81 U.S. 511, 528 (1871). Infringement is judged from the viewpoint of the ordinary observer, not the eye of an expert. *Id.*  The ordinary observer unquestionably would perceive substantial similarity between the Accused Products and the '780 Patent, and be deceived into purchasing the Accused Products believing them to be the patented design.

Marklyn's defenses and/or counterclaims attacking the validity of the '780 Patent are unfounded.  The '780 Patent is presumed valid. 35 U.S.C. § 282.  Marklyn therefore must establish any invalidity defense by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. Partnership*, --- U.S. ----, 131 S.Ct. 2238, 2242 (2011).  Marklyn cannot meet this heavy burden.

No prior art anticipates the '780 Patent. "[D]esign patent anticipation requires a showing that a single prior art reference is identical in all material respects to the claimed invention." *Door–Master Corp. v. Yorktowne, Inc.,* 256 F.3d 1308, 1312 (Fed. Cir. 2001). Marklyn has not produced a single reference that discloses the visual appearance of the '780 Patent and, thus, its anticipation defense must fail.

First, the JOM product catalog and/or flyer cited by Marklyn does not anticipate. In fact, based on the images within the JOM catalog, it is impossible to ascertain the visual appearance of the product that Marklyn asserts as prior art. Far from producing clear and convincing evidence that an unauthenticated product catalog from JOM disclosed the same invention as claimed in the '780 Patent, Marklyn has produced no evidence of what that reference even looked like. The best images of that product show what appears to be a rope-like LED strip where the LEDs are mounted in the center. Moreover, Marklyn's representatives contend that the JOM product depicted is the same as claimed in the JOM GM discussed below. As such, the product incorporates a light isolating shield, giving it an entirely different overall visual appearance from that of the '780 Patent design.

Second, the German utility model registration cited by Marklyn, a "Gebrachsmusterschrift" ("JOM GM"), does not anticipate. The JOM GM is a limited type of patent registration that is not analogous to a United States patent. Courts limit the use of a GM as prior art to precisely what was claimed in the registration, and no more. Specifically, "only that which is 'patented' by a GM may be considered as prior art under Section 102(b) . . . . Subject matter which is ancillary to, but not a part of, the

patented subject matter may not be considered." *Bendix Corp. v. Belax, Inc.*, 421 F.2d 809, 812 (7th Cir. 1970); *see also Max Daetwyler Corp. v. Input Graphics, Inc.*, 583 F. Supp. 446, 455 (E.D. Penn. 1984).  "Thus, if the claims of the GM do not disclose the invention of the American patent but the drawings or specifications of the GM do disclose the invention, the American patent is not anticipated by the GM."  *Max Daetwyler Corp.*, 583 F. Supp. at 455.  More broadly, the "specifications and drawings in the GM can only be considered under § 102(b) to the extent that they help to explain the claims of the GM."  *Id.*  The claims of the JOM GM quite clearly describe an article having a completely different visual appearance than the design shown in the '780 patent.  According to Marklyn, the first claim of the JOM GM states:

> Light emitting band with bendable elastic linear carrier (22) . . . . The light emitting diodes (40) are uniquely placed along the thin side (34) of the flexible and bendable carrier (22) **which is covered by a light isolating shield (48) over a carrier (22) and around the light emitting elements (40)** to provide at least splash water resistance.

Each of the remaining claims of the JOM GM depends from the first claim and, consequently, includes a limitation of a light isolating shield, which covers at least the top surface of the LEDs and the medium in which the LEDs are embedded.   Such a design would appear entirely different than the design shown in the '780 patent and cannot anticipate.

Third, Korean application cited by Marklyn also does not anticipate because it depicts a design significantly different in a number of respects from the '780 patent. The illustrations in the Korean application clearly show that the LEDs are configured in the center of the attachment strip, rather than near the edge. This distinct difference

precludes the reference from anticipating the '780 patent.  Other differences, such as the parallel areas of relief or texture that run along either side of the centered LEDs on the strip, likewise preclude a finding of anticipation.  Marklyn cannot prove what in fact the Korean application discloses based on the lack of views and figures in the application, except that the design depicted is clearly not identical or even roughly similar to the design claimed in the '780 patent.

Fourth, Marklyn's fashion accessory patent application (the "Finn reference") has no visual similarities in design when compared to the '780 patent.  The Finn reference could not anticipate because it is not a design for the article of commerce in question – a flexible LED attachment strip with a plurality of forward facing LEDs.  Moreover, the illustrations in the Finn reference show that the LEDs are embedded in a fabric material or material sewn into fabric (rendering only a portion or a light emitting surface of each LED visible to an observer), and an entirely different configuration and composition of shapes than what is shown in the '780 patent.  The Finn reference cannot anticipate because it has an entirely different overall effect than the '780 patent.

Finally, Marklyn's other alleged "prior art" references do not qualify as prior art and could not anticipate the '780 patent in any event.  The documents Marklyn has produced regarding the date of the "Evershow Product XY2101" show that it dates to May 2009 or later, well after Mr. Huang's invention of the '780 patent.  Marklyn did not timely disclose any actual Evershow product constituting prior art and cannot attempt to do so by surprise at trial.  Further, Marklyn's representatives testified that the Evershow product is visually different from the '780 Patent and/or the Marklyn LEDLitz.  Marklyn

did not proffer any alleged art from "TradeW and Shenzhen Dena website (2006)"
during discovery in this case and may not untimely introduce any such materials at trial.
Moreover, the website screenshots Marklyn seeks to rely on do not disclose adequate
views for any anticipation analysis, and there is no evidence to establish a claimed
priority date of "2006" for these undisclosed materials.  Moreover, Marklyn cannot show
that any such Evershow, TradeW or Shenzhen Dena product was known or used by the
public in the United States before Mr. Huang's invention of the '780 patent.  Likewise,
the Japanese application Marklyn relies on post-dates Mr. Huang's invention and shows
a design markedly different than the '780 patent.  The Kanesaka reference is for a
different article of commerce and has a fundamentally different overall visual
appearance than the design shown in the '780 patent.

Marklyn's obviousness challenge fails for similar reasons.  Obviousness cannot
be premised merely upon a showing that each limitation of the claim (or in a design
patent case, as here, each element of the claimed design) is present in some prior art
reference.  *Unigene Labs, Inc. v. Apotex, Inc.*, 655 F. 3d 1352, 1360 (Fed. Cir. 2011).
Instead, Marklyn must prove that a person of ordinary skill at the time of the invention
would have selected and combined those specific prior art elements in the normal
course to yield the invention disclosed in the patent.  *Id.*  For design patents, the inquiry
is "whether one of ordinary skill would have combined teachings of the prior art to create
the same overall visual appearance as the claimed design."  *Apple, Inc. v. Samsung
Electronics Co., Ltd.*, 678 F.3d 1314, 1329 (Fed. Cir. 2012).  The inquiry mandated
under *Apple, Inc.* is a two-step process.  First, the defendant must produce a primary

reference—"a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design." *Apple*, 678 F.3d at 1329. Only if a primary reference is proven may secondary references be considered to modify the primary reference. *Id.* No secondary reference can be combined with or modify a primary reference unless the secondary reference is "so related to the primary reference that the appearance of certain ornamental features in one would suggest the application of those features to the other[.]" *Id.* at 1330.

Marklyn has not identified or produced a primary reference to the '780 patent. Marklyn has not disclosed any testimony from a designer of ordinary skill that identifies a primary reference. Moreover, none of the prior art references relied upon by Marklyn has substantially the same visual appearance as the '780 patent and, therefore, none discloses a design basically the same the '780 patent. *See Apple, Inc.*, 678 F.3d at 1331. Marklyn likewise has failed to identify or produce any secondary references, and has disclosed no testimony from a designer of ordinary skill that identifies any. Even if Marklyn had identified a primary reference or any secondary references, which it has not and cannot, there is no evidence to support a combination of multiple prior art references. Instead, Marklyn's obviousness challenge is based on a mistaken assertion that the '780 patent has only "two features, side emitting and off center mounted LED's obvious." Such assertion ignores the overall visual effect of the '780 patent and supplants it with an erroneous construction of the patent. Further, Marklyn has no evidence that a designer at the time of the invention of the '780 patent would have deemed any combination obvious. Contrary to Marklyn's approach, courts may not

allow "hindsight reconstruction of references to reach the claimed invention without any explanation as to how or why the references would be combined to produce the claimed invention." *Kinetic Concepts Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1368 (Fed. Cir. 2012).

Marklyn also cannot sustain its burden to prove obviousness under *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966), because it improperly relies on certain references that do not qualify as "prior art"; because significant differences exist between any actual prior art adduced by Marklyn and the '780 patent; and because objective evidence demonstrates non-obviousness. The evidence at trial will show that Mr. Huang's design patented in the '780 patent enjoyed early and continued commercial success. Competitors of Big Time Auto and its authorized United States distributor of products covered by the '780 patent—including Marklyn—have engaged in widespread copying of Mr. Huang's patented design. Marklyn and others have enjoyed commercial success with respect to their infringing products that unlawfully use the '780 Patent design. Copying and commercial success are long recognized indicators of non-obviousness. *See, e.g., Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1379 (Fed. Cir. 2012). In short, the '780 patent is not invalid as obvious.

Marklyn's contentions that the '780 patent is invalid as "functional" or that parts of the design shown in Figures 1 through 9 should be ignored as "functional features" also lack support. Marklyn bases such contentions on the transmission of light, subject matter which forms no part of the patent and is expressly disclaimed in Figure 6 and its corresponding text. Broken lines in the drawings of a design patent are used "to

disclose the environment related to the claimed design and to define the bounds of the claim." MPEP § 1503.02. Light emission forms no part of the claimed design and, hence, cannot dictate the design so as to render it "functional" under design patent law. A design or design element is not "functional" unless it is "dictated by" its use or purpose. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). Marklyn cannot prove that the LEDs must be positioned, shaped and arranged on the strip as shown in the '780 patent as a result of a function served. To the contrary, the articles sold under the '780 patent and Marklyn's accused products are sold for use in myriad applications without any constraints on how consumers may use them. Further, there are many different designs that would accomplish the "function" of light emission from a "tight" space as well or better than the design shown in the '780 patent. The existence of numerous design alternatives (e.g., changing the location, relative spacing, or shape or type of the LEDs) for the same article at issue in the '780 Patent, all of which would accomplish the "functions" claimed by Marklyn, defeat any functionality defense or parsing of the infringement analysis.

Marklyn's defenses challenging inventorship of the '780 patent and alleging inequitable conduct are without basis. "An inventor under the patent laws is the person or persons who conceived the patented invention. An inventor may then use the services, ideas, and aid of others in the process of perfecting his invention without losing his right to a patent." *Hoop v. Hoop*, 279 F.3d 1004, 1007 (Fed. Cir. 2002). The uncontroverted facts prove that Mr. Huang conceived the patented invention. Marklyn has no evidence of inequitable conduct. It has not identified a single reference known

to Mr. Huang that was withheld from the patent office.  Particularly in light of the standard set forth in *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011), Marklyn's claim of inequitable conduct constitutes vexatious and needless multiplication of this litigation.

Plaintiffs seek an award of damages against Marklyn adequate to compensate Plaintiffs for Marklyn's infringement in the amount of the total profits made by Marklyn on all sales of the Accused Product, coupled with non-monetary relief in the form of a permanent final injunction against continuing infringement by Marklyn and all persons or entities related to it or acting on its behalf.  At this time, Marklyn's profits awardable under 35 U.S.C. § 289 are in excess of $1,000,000, as described in the expert reports of Joseph T. Gardemal, III dated April 11 and May 2, 2014, which are incorporated herein by reference.  Plaintiffs seek to recover their reasonable attorneys' fees and costs of suit, along with pre- and post-judgment interest.  Plaintiff will also seek an additional sum on account of the willful, intentional and deliberate character of Marklyn's infringing acts pursuant to 35 U.S.C. § 284.

**b.    Defendant's Defenses:**

Marklyn asserts that its accused products do not infringe the '780 Patent. The reasons include that the overall appearance of the accused products are not substantially the same as the '780 Patent design when viewed in light of the prior art. The Alpena LEDLitz is different in a number of respects, including that the LEDLitz has an elliptical or curved upper surface whereas the Patent Design upper surface is flat with spaced LED's; that the LEDLitz LEDs are the center of a "sandwich" with both an

upper and lower surface while the '780 Patent design has the LED's atop the only surface; that the LEDLitz LED's are spaced further apart on the strip; that the LEDLitz LED's are shaped differently; that the Patent LED's are further back from the edge of the strip than the LEDLitz LED's; that the Patent LED's are nearly three times the height of the LEDLitz LEDs'; and that the LEDLitz bottom surface is 3M adhesive backing material while the Patent design bottom surface is not. Contrary to assertions by plaintiff the upper surface of the LEDLitz is not "extraneous" but rather an integral part of the product not to be ignored. Arminak & Associates, Inc. v. Saint-Gobain Calmar, Inc., 424 F.Supp.2d 1188,1194-5 (C.D.Cal. 2006); Bergstrom v. Sears, Roebuck and Co., 496 F.Supp. 476,492-3 (D.Minn. 1980). The upper elliptical surface is as much a part of the appearance of the LEDLitz product as any other feature.

The similarities are that both have a flexible attachment strip; both have LED's mounted thereon; both have edge or near edge mounted LED's and both have forward facing LED's. Where there are similarities, the law provides that the fact finder should look to recent close prior art to accentuate the differences between the prior art and the patented design to focus on what was new in the patent. Durdin v. Kuryakyn Holdings, Inc., 440 F.Supp.2d 921 (W.D.Wis. 2006). The edge mounting and forward facing of the LED's on a flexible strip was not new.  These are features clearly disclosed in several items of prior art. Plaintiffs have acknowledged in a pleading that they do not "claim invention of 'forward facing' LED's, 'edge mounted LED's', or a flexible LED attachment strip."  In other words the product category "LED Flexible attachment strip with edge mounted and forward facing LED's" existed before December 22, 2008, and is not the

invention. Marklyn submits that there is nothing new in the '780 Design.

The '780 Patent design is invalid under 35 USC 101, 102, 103 and/or 116. Marklyn asserts that the '780 Patent design is invalid for several reasons, including that it was anticipated; that it was obvious and that its two key features are functional.

The alleged invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application, December 22, 2009.

Prior to December 22, 2008, several patents and publications described the invention including Kanesaka, USP 6,619,831; Korean Patent KR1020070074092A(2007); Finn US2008/0198578 Patent Application Publication (2008); JOM Utility Model "DE 20 2008 007 474 U1 2008.09.11 and publications JOM 2008 Product Guide; Evershow Product XY2101 packaging and photo (2008); and TradeW and Shenzhen Dena website (2006). Plaintiff seeks to distinguish these items by arguing they have additional elements beyond the flexible strip and LEDs edge mounted and side emitting. But this is contrary to their position regarding the LEDLitz and the other Alpena products, where such elements are to be ignored. The test for infringement is the same as for anticipation.

The maxim of "that which infringes if later anticipates if earlier" applies in this situation. SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1321 (Fed.Cir.2006); 3M Innovative Properties, Co. v. Barton Nelson, Inc., Civil 02-3591(PAM/RLE); King Pharmaceuticals, Inc. v. Eon Labs, Inc., 593 F.Supp.2d 501 (E.D.N.Y. 2009). Plaintiffs argue that elements of the LEDLitz product must be ignored

in assessing infringement but to defeat anticipation are quick to point to additional elements of the prior art which they argue the '780 Patent does not show. All the prior art shows a flexible strip with side emitting and edge or near edge mounted LED's thereon.

Kanesaka discloses a flexible strip with edge mounted side emitting LED's. See Fig.11 and description col. 4, l. 45-55. The Korean patent discloses a flexible strip with a "side emitting type" LED and "multiple LED's ...positioned consecutively on one side of the ...FPCB". See English Translation, Korean patent, Claim 1. Finn discloses a flexible attachment strip with side emitting LED's (para.38) shown near edge mounted (Fig. 11A and 11D). The JOM Utility Model discloses a flexible carrier (0010) with the side emitting LED's on the small side. In fact, it speaks of light elements (diodes) embedded in the carrier (0025) and being water proof (0011), like LEDLitz. The JOM Product Guide, coupled with the Flyer, to be authenticated by the Philipps, discloses a flexible attachment strip with edge mounted side emitting LED's. That is why Marklyn pursued the product for purchase, only to discover it was too expensive for the US market.

The alleged invention was also known or used by others in this country, or patented or described in a printed publication in this or a foreign country before the invention thereof by the named inventors.

The time of "invention" was sometime in 2009 at the earliest, most probably April/ May 2009. In addition to the art prior to December 22, 2008, there was additional art prior to the invention including a COOLON advertisement for a side emitting forward

15

facing LED strip for architectural purposes published  March 7, 2009, and a Japanese patent PCT application WO2009019816A1 published Feb 12, 2009. Marklyn contends both were published before the claimed invention of the '780 Design by Huang.

The COOLON ad discloses a flexible attachable strip with edge mounted side emitting LED's for architectural applications. The Japanese patent discloses "Side View Type" LED's arranged "along the edge of a strip flexible". English Abstract.

Marklyn also contends the '780 Patent Design was obvious. The differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious at the time the invention was made to a person of ordinary skill in the art. The relevant time is when the invention was completed, which we do not yet know. The person of ordinary skill is a hypothetical person. That hypothetical person is assumed to be familiar with all the prior art. A person familiar with the prior art referenced above would have considered the '780 Patent design obvious. Obviousness need not be based on a single reference, rather, other references may be considered to find a design obvious. See In re Borden, 90 F.3d at 1574.

Edge mounting and forward facing the LED's was disclosed prior to December 22, 2008. By 2009, these products were in the US market, both in stores and for purchase on the Internet. What Huang claims as copying and demonstration of the value of his invention was in fact people getting these products out before him or at least at the same time.

The key elements of the design are functional rather than ornamental because edge mounting and forward facing the LED's increases visibility to persons outside the

vehicle and enhances illumination. This is true because the two elements permit attaching the product to a horizontal surface and yet having the lens facing forward.  In other words it functions as a daytime running light.  These two features also increase illuminance.  Facing the lens of the LED "forward" (side emitting) and mounting the LED at or near the edge of the strip is dictated by the function we identify.

Marklyn also asserts that the jury must be instructed to consider, in deciding infringement,  only any ornamental aspects of the edge mounted and forward facing LED's and not simply that they are  edge or near edge mounted and forward facing. Because the positioning and lens facing are functional, only any ornamental aspect of those features should be considered by the jury in deciding infringement. Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665,680 (Fed. Cir. 2008); Richardson v. Stanley Works, Inc., 597 F.3d 1288 (Fed. Cir. 2010); ." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993)  DePaoli v. Daisy Manufacturing Co., Inc., Civil Action 07-cv-11778-DPW (MADC); Elmer v. ICC Fabricating, Inc., 67 F.3d 1571, 1577 (Fed. Cir. 1995); Smith Corona Corp. v. Pelikan, Inc., 784 F.Supp. 452 (M.D.Tenn. 1992)

Therefore the '780 Patent design is either invalid or at the least the jury must be told that only any ornamental aspect of the edge mounting and forward facing of the LED's is to be considered in determining infringement, distinct from edge mounting and forward facing alone. Plaintiffs' argument that all articles of manufacture (a plastic flamingo?)have a function does not defeat this defense. Here the two features are dictated by the desired functionality.

The named inventor did not invent the design patented.   Before Huang's alleged invention, the alleged invention was made in this country by another who has not abandoned suppressed or concealed it. The patent is invalid for failure to make material disclosures to the USPTO, thus inequitable conduct. Huang failed to disclose at least the Kanesaka patent; the Korean patent; the JOM Product Guide; the JOM Utility Model; and the Evershow XY2101.

Marklyn relied on advice of counsel in acting as it did. After receiving letters alleging it infringed a not yet issued patent and then the '780 Patent, Marklyn sought advice from Gowlings, a preeminent law firm and Peter Milne, an attorney there. Marklyn was advised that the '780 Patent was most likely invalid because of prior art showing the same design features. Thus, Marklyn did not wilfully infringe or have any other wrongful intent.

DAMAGES

Defendant Marklyn disputes the amount of damages claimed. It asserts that additional costs must be deducted from gross revenues, leaving a net profit of $372,891, on the accused products. Certain expenses not deducted by Gardemal are directly related to the sale of the accused products and increase with increases in sales. Other fixed expenses should also be allocated to the accused product revenue.

### 4. STIPULATIONS

The parties stipulate to the following facts:

1.      On December 22, 2009, Patent Application No. 29/348,323 ("the '323 Application") was filed with the U.S. Patent and Trademark Office ("USPTO") to protect

the ornamental design of Mr. Huang entitled "FLEXIBLE ATTACHMENT STRIP HAVING A PLURALITY OF FORWARD FACING LEDS."

2.      On April 27, 2010, the USPTO issued United States Patent No. D614,780 ("the '780 Patent") entitled "FLEXIBLE ATTACHMENT STRIP HAVING A PLURALITY OF FORWARD FACING LEDS" from the '323 Application.

3.      Big Time is a Taiwan corporation with its principal place of business at No. 160 Erh Jen Rd., Sec. 1 Pao An Village, Jen Te Hsiang, Tainan Hsien, Taiwan, R.O.C. Mr. Huang is the owner and General Manager of Big Time.

4.      Big Time manufactures and sells a variety of products the automotive accessory market.   Among other products, Big Time manufactures and sells flexible LED strip products.

5.      Pilot Automotive, Inc. and Marklyn compete in the United States in the market for aftermarket automotive accessories, including lighting products.

6.      Marklyn is a Canada corporation with its principal place of business at 190 Bovaird Drive West, Unit #28, Brampton, Ontario, Canada L7A 1A2.

7.      Marklyn offers for sale and sells in the United States flexible LED strip products under the following names and part numbers:

"LEDLitz" – part numbers 77015, 77016, 77017, 77018;

"Head 'N' Grill Litz" – part number 77223;

"Motion LED" – part numbers 77512, 77513.

Such Marklyn products are accused of infringing the '780 patent and, collectively, referred to as the "Accused Products."

## 5. PENDING MOTIONS

Plaintiffs' Motion to Exclude Expert Opinion Testimony [#87] and Marklyn's Motion in Limine to Exclude Certain Opinions of John Cheng [#86] are pending. No other motions are pending at this time.

## 6. WITNESSES

**a.      List the nonexpert witnesses to be called by each party.  List separately:**

**Plaintiff:**

(1)      witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

1.    Yao-Hung Huang, Big Tim Auto Parts Manufacturing, Inc.

All facts and circumstances relating to Plaintiffs' claim for patent infringement including, without limitation, conception and reduction to practice of the '780 patent; state of the art at the time of invention and at the time of his application for the '780 patent; scope and content of prior art; differences between prior art  and '780 patent; motivations of designers of ordinary skill in the art; commercial success and copying of '780 patent; marketing and selling products covered by the '780 patent; the industry and competitors' reaction to the '780 patent and products sold under it; communications with Marklyn relating to the '780 patent; Marklyn's infringement of the '780 patent; and the market for products applying the design shown in the '780 patent.

(2)      witnesses who may be present at trial if the need arises (see Fed. R. Civ. P. 26(a)(3)(A));

1.    John Phillips, Marklyn Group Inc.

Marklyn's knowledge of and infringement of the '780 patent; Marklyn's development of the Accused Products; Marklyn's sales of the Accused Products; the

market for the Accused Products; and other matters as relevant for impeachment and rebuttal.

      2.     Gabor Kiss, Marklyn Group Inc.

Marklyn's knowledge of and infringement of the '780 patent; Marklyn's development of the Accused Products; Marklyn's sales of the Accused Products; the market for the Accused Products; and other matters as relevant for impeachment and rebuttal.

      3.     Any witness necessary to rebut or impeach any witness offered in this matter.

  (3)    witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony. See Fed. R. Civ. P. 26(a)(3)(B).

      1.     None, unless needed for impeachment or rebuttal.

**Defendant:**

  (1)    witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

      1.     John Philipps, Marklyn Group Inc.

Testimony regarding the development of the accused products; prior art including the JOM 22010 product, Product Guide, Flyer  and Utility Model; Marklyn's selection as a supplier to   Auto Zone and others; lack of infringement, including differences between the accused products and the '780 Patent ; state of the art both at the time of invention and December 22, 2008; scope and content of prior art; similarities in the prior art and '780 patent; motivations of designers of ordinary skill in the art; obviousness of the 780 patent to a person of ordinary skill in the design of LED flexible attachment strips products the perception of buyers of these products;

commercial success of edge mounted side emitting LED strips; marketing and selling products of this type; functionality of the two features; the industry and competitors' sales of the product category; communications with Huang relating to the '780 patent; revenue, costs and profits from sales;  and as further set forth in his deposition and Rule 26 Disclosures.

        2.     Cheryl (Charlie) Philipps, Marklyn Group Inc.

Testimony regarding the trip to Germany in Fall, 2008, to Automechanika; the JOM Product Guide and JOM Flyers; the content thereof.

        3.     Gabor Kiss, Marklyn Group Inc.

Testimony regarding the development of the accused products; attendance  at the 2008 SEMA show; the XY2101 product; prior art including the Evershow and JOM Product Guide  and Utility Model; sourcing in China; Marklyn's selection as a supplier to Auto Zone and others; sales of product ; net profits; lack of infringement, including differences between the accused products and the '780 Patent ; state of the art both at the time of invention and December 22, 2008; scope and content of prior art; similarities of prior art and '780 patent; motivations of designers of ordinary skill in the art; obviousness of the '780 patent to a person of ordinary skill in the design of LED flexible attachment strips products; functionality;  the perception of buyers of these products; commercial success of edge mounted side emitting LED strips; marketing and selling products of this type; the industry and competitors' sales of the product category; communications with Huang relating to the '780 patent; and as further set forth in his deposition and Rule 26 disclosures.

4.    Paul Tokiwa, Marklyn Group Inc.

Financial information, including profits earned by sales of the accused products; costs incurred in selling the accused products; net profits of $148,146; the reasons why additional costs, including those that increase with increased sales and some fixed costs should be deducted beyond those deducted by Gardemal; and as disclosed in the Rule 26 Disclosure and Spreadsheets provided by Marklyn.

5.    Aileen Law

Testimony to authenticate prior art, including US and foreign patents, certifications thereof; English language translations; availability on the Internet at public websites; and publication.

6.    Yao-Hung Huang

Testimony as set forth in his deposition.

(2)    witnesses who may be present at trial if the need arises (see Fed. R. Civ. P. 26(a)(3)(A));

1.    Phil Suslow, Oznium , Pagosa Springs, Colorado

Testimony regarding the sale of Oznium LED flexible attachment strip products and functionality.

(3)    witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony.  See Fed. R. Civ. P. 26(a)(3)(B).

1.    Yao-Hung Huang as needed

b.    **List the expert witnesses to be called by each party.  List separately:**

**Plaintiff:**

(1)     witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

    1.     John Cheng, Pilot Automotive, Inc.

Mr. Cheng will testify on all subject matters referenced, discussed and disclosed in Plaintiffs' expert witness disclosures regarding his testimony; Mr. Cheng's reports dated April 4, 2014 and May 2, 2014; and Mr. Cheng's deposition testimony in this case.

*as REB 7/11/14*

    2.     Joseph T. Gardemal III, Alvarez & Marsal Global Forensic and Dispute Services, LLC.

Mr. Gardemal will testify on all subject matters referenced, discussed and disclosed in Plaintiffs' expert witness disclosures regarding his testimony; and Mr. Gardemal's reports dated April 11, 2014 and May 2, 2014.

(2)     witnesses who may be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

    1.     None, unless needed for impeachment or rebuttal.

(3)     witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony. See Fed. R. Civ. P. 26(a)(3)(B).

    1.     None, unless needed for impeachment or rebuttal.

**Defendant:**

(1)     witnesses who will be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

    1.     Ben Railsback, Knott Laboratory, Denver Colorado; as set forth in the Report.

    2.     Paul Tokiwa, Marklyn; as set forth in the Rule 26 Disclosure.

    3.     Gabor Kiss , Marklyn; as set forth is the Rule 26 Disclosure,

including with respect to knowledge of purchasers of these products; the perception

of the purchasers at the point of purchase; functionality and lack of infringement.

    4.    John Philipps, Marklyn; as set forth in Rule 26 Disclosure,

including with respect to knowledge of purchasers of these products ; the perception

of the purchasers at the point of purchase; functionality and lack of infringement.

   (2)   witnesses who may be present at trial (see Fed. R. Civ. P. 26(a)(3)(A));

    1.   Steve Knapp, Knott Laboratory, Denver Colorado (if Railsback

unavailable).

   (3)   witnesses where testimony is expected to be presented by means of a deposition and, if not taken steno graphically, a transcript of the pertinent portions of the deposition testimony.  See Fed. R. Civ. P. 26(a)(3)(B).

    None except as needed for impeachment or rebuttal

## 7. EXHIBITS

a.    Exhibit lists

    The Parties' Joint Exhibit List is attached hereto as **Exhibit A**.

b.    Copies of listed exhibits must be provided to opposing counsel and any pro se

party no later than 45 days before trial.  Objections to the exhibits must be served by

personal delivery, electronic mail, or facsimile no later than 30 days before trial.

## 8. DISCOVERY

    Discovery has been completed.

## 9. SPECIAL ISSUES

    None

## 10. SETTLEMENT

a.      Counsel for the parties met by telephone, in person and through electronic mail at various times from late 2011 through May 2014 to discuss settlement of the case in good faith.

b.      The participants in the settlement discussions included counsel and party representatives.

c.      The parties were promptly informed of all offers of settlement.

d.      Counsel for the parties and any pro se party do not intend to hold future settlement conferences.

e.      It appears from the discussion by all counsel and any pro se party that there is limited possibility of settlement.

f.      Counsel for the parties and any pro se party considered ADR in accordance with D.C.COLO. LCivR.16.6.

## 11. OFFER OF JUDGMENT

Counsel and any pro se party acknowledge familiarity with the provision of rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure.   Counsel have discussed it with the clients against whom claims are made in this case.


## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice. The

pleadings will be deemed merged herein. This Final Pretrial Order supersedes the

Scheduling Order. In the event of ambiguity in any provision of this Final Pretrial Order,

reference may be made to the record of the pretrial conference to the extent reported by

stenographic notes and to the pleadings.

### 13. TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

Trial by jury shall commence **August 4, 2014**, at 8:30 a.m., in courtroom A1001,

located on the 10th Floor North, of the Alfred A. Arraj, United States Courthouse Annex,

901 19th Street, Denver, Colorado 80294.

The Court has reserved five (5) days for trial:

- Monday, August 4, 2014, through Thursday, August 7, 2014; and
- Monday, August 11, 2014;

Counsel and any pro se party shall appear in courtroom A1001 on the first day of trial at

8:00 a.m., to review and discuss with the courtroom deputy clerk and the court, if

necessary, any final details, arrangements, or requirements concerning the trial.

DATED this __11th__ day of __July__, 2014.

BY THE COURT

United States District Judge

APPROVED:

LATHROP & GAGE LLP                          LAW OFFICE OF JAMES A. JABLONSKI

s/Aaron P. Bradford_____          s/James A. Jablonski_____
Aaron P. Bradford, Esq.                      James A Jablonski, Esq.
Alexander C. Clayden, Esq.                   1801 Broadway, Suite 1100
950 17th Street, Suite 2400                  Denver, Colorado 80202
Denver, Colorado 80202                       Phone:   303.292.0110
Phone:   720.931.3200                        Email:   jim@jablonski-law.com
Fax:     720.931.3201
Email:   abradford@lathropgage.com           *Attorneys for Defendant*
         aclayden@lathropgage.com

*Attorneys for Plaintiffs*