## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Case No. 11-cv-01765-REB-BNB

YAO-HUNG HUANG, and
BIG TIME AUTO PARTS MANUFACTURING, INC., a Taiwan corporation,

      Plaintiffs,

v.

MARKLYN GROUP INC., d/b/a ALPENA, a Canadian corporation,

      Defendant.

---

## ORDER RE: RULE 702 MOTIONS

---

**Blackburn, J.**

      The matters before me are (1) defendant's **Motion To Exclude Certain
Opinions of John Cheng Under Rule 702** [#86],[1] filed June 2, 2014; and (2) plaintiffs'
**Motion To Exclude Expert Opinion Testimony Under Fed. R. Civ. P. 702** [#87], filed
June 2, 2014.  I heard oral argument on the issues raised by and inherent to these
motions on July 16, 2014.  Having considered the arguments raised in the motions and
expatiated at the hearing, and being thus duly apprised of the relevant issues,
arguments, and authorities, I deny defendant's motion and grant plaintiffs' motion.

## I.  JURISDICTION

      I have jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 (federal
question) and 1338(a) (action for patent infringement).

---

[1]  "[#86]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this
convention throughout this order.

## II.  STANDARD OF REVIEW

Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony, provides that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

**FED. R. EVID.** 702.  As interpreted by the Supreme Court, Rule 702 requires that an expert's testimony be both reliable, in that the witness is qualified to testify regarding the subject, and relevant, in that it will assist the trier in determining a fact in issue. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-92, 113 S.Ct. 2786, 2795-96, 125 L.Ed.2d 469 (1993); *Truck Insurance Exchange v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004).  An expert may be qualified by "knowledge, skill, experience, training, or education" to offer an opinion on an issue relevant to the case. **FED. R. EVID.** 702(a).  *See also 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  An expert opinion is reliable when it is based on sufficient facts or data, employs a methodology generally deemed reliable in the expert's field, and properly applies such methods to the facts of the case.  *See* **FED. R. EVID.** 702(b), (c), & (d); *United States v. Crabbe*, 556 F.Supp.2d 1217, 1222-23 (D. Colo. 2008).

Guided by these principles, the trial court has broad discretion in determining whether expert testimony is sufficiently reliable and relevant to be admissible.  *Truck*

*Insurance Exchange*, 360 F.3d at 1210; *Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243 (10th Cir. 2000).  The overarching purpose of the court's inquiry is "to make certain that the expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Goebel v. Denver and Rio Grand Western Railroad Co.*, 346 F.3d 987, 992 (10th Cir. 2003) (quoting *Kumho Tire*, 119 S.Ct. at 1176).  Generally, "rejection of expert testimony is the exception rather than the rule." *United States v. Nacchio*, 519 F.3d 1140, 1154 (10th Cir. 2008), *vacated in part on rehearing en banc*, 555 F.3d 1234 (10th Cir. 2009).  *See also* FED. R. EVID. 702 (2000 Advisory Comm. Notes).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 113 S.Ct. at 2798.

## III.  ANALYSIS

Plaintiff Big Time Auto Parts Manufacturing, Inc. ("Big Time"), manufactures light fixtures for many leading automotive aftermarket distributors for retail sale.   Plaintiff Yao-Hung Huang is the owner of Big Time and primarily responsible for the design of the company's various products.  On April 27, 2010, Mr. Huang was issued United States Design Patent No. 614,780 (the "'780 patent" or the "patent-in-suit") for a "flexible attachment strip" on which are affixed multiple light emitting diodes ("LEDs").  Plaintiffs brought this suit claiming that certain of defendant's competing products, including particularly the Alpena LEDLitz, infringe plaintiffs' rights in the '780 patent.  Defendant denies that its products infringe and raises the affirmative defense of obviousness.

The patent laws provide, *inter alia*, that "[w]hoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 171.  ***See also Hupp v. Siroflex of America, Inc.***, 122 F.3d 1456, 1460 (Fed. Cir. 1997).  "A design patent's claim is limited to what is shown in the application drawings."  ***Shop*TV, Inc. v. Bed Bath & Beyond, Inc.***, 2009 WL 1965494 at * 3 (D. Colo. July 8, 2009) (citations and internal quotation marks omitted).  Thus, a design patent generally need not, and should not, be construed in terms of a "detailed verbal description of the claimed design, as is typically done in the case of utility patents."  ***Egyptian Goddess, Inc. v. Swisa, Inc.***, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc), ***cert. denied***, 129 S.Ct. 1917 (2009).  Thus, as previously construed by this court, the '780 patent claims "[t]he ornamental design for a flexible attachment strip having a plurality of forward facing LEDs, as shown and described."  (**Order Construing Disputed Patent Claims** at 4 [#42], filed October 11, 2012.)

Both parties proffer expert testimony in support of their respective positions regarding their respective claims and defenses.  Plaintiffs' motion challenges the admissibility of the testimony of Ben Railsback of Knott Laboratories, LLC ("Knott Labs").[2]  By its motion, defendant seeks to exclude certain opinions of plaintiffs' expert, John Cheng.  I examine the issues raised by these motions separately.

---

[2] By their motion, plaintiffs argue that Mr. Railsback should not be permitted to testify as to any issues relating to the defense of anticipation.  By its response, defendant confirms that it does not assert anticipation as a defense to this action.  To that extent, therefore, plaintiffs' motion is moot.

4

## A.  MR. RAILSBACK

Mr. Railsback is Director of Mechanical Engineering at Knott Labs.[3]  Knott Labs "reviewed and analyzed information related to Marklyn Light Emitting Diode (LED) products, performed testing related to the illumination, visibility and function of specific LED products, and reviewed multiple patents related to products with LEDs associated with this evaluation."  (**Def. Motion App.**, Exh. 1 at 1 [#87], filed June 2, 2014.) Plaintiffs challenge Mr. Railsback's qualifications to offer opinions relevant to the issues of infringement and obviousness, the methodology he employed in assessing infringement and obviousness, and the relevance of his opinions regarding the functionality of forward-facing, edge-mounted LEDs.  I examine each of the issues raised by and inherent to those arguments in turn.

## 1.  INFRINGEMENT

Plaintiffs first challenge Mr. Railsback's qualifications to opine as an expert on the issue of infringement.  Whether a design patent is infringed is judged by the standard of the ordinary observer:

> To show infringement under the proper test, an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design.

*Crocs, Inc. v. International Trade Commission*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).  *See also Gorham Manufacturing Co. v. White*, 81 U.S. (14 Wall.) 511, 528,

---

[3]  The subject report was authored by both Mr. Railsback and another senior engineer, Stephen Knapp.  However, Mr. Railsback is the anticipated witness at trial; Mr. Knapp is designated to testify only in the event that Mr. Railsback becomes unavailable.  (*See* **Final Pretrial Order** ¶ 6(2) at 25 [#100], filed July 11, 2014.)  The court's analysis herein applies equally regardless which witness is offered to explicate the report.

20 L.Ed. 731 (1871) ("[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.").  Plaintiffs argue that Mr. Railsback's expertise as a mechanical engineer specializing in automotive accident reconstruction and mechanical failure analyses, does not qualify him to testify as to the perceptions the ordinary purchaser of automotive aftermarket accessory products.

In its response brief, defendant relied on Mr. Railsback's background in "product development" to suggest that he was qualified to offer opinions relevant to the ordinary observer standard.[4]  However, it does not require a particular close reading of Mr. Railsback's CV, however, to perceive that this product development experience is limited to areas not at all relevant in this lawsuit.

Moreover, defendant acknowledged at the hearing that Mr. Railsback had no particular qualification in this regard, but nevertheless maintained that he should be allowed to testify because he himself is an ordinary observer.  This suggestion is specious.  Assuming *arguendo* that the argument's factual predicate were apparent from the record before the court – which it is not – it would constitute error to permit defendant to present, under the imprimatur of a so-called "expert," an opinion which the witness is, at best, no more qualified than the members of the jury to make.  **FED. R. EVID.** 702(a) (expert's opinion must be helpful to the trier of fact).

---

[4]  Defendant also argued that Mr. Railsback's graduate thesis work on the intensity of LEDs qualified him to offer opinions relevant to the issues in this case.  This assertion is neither self-evident from the record nor adequately explained in the response.

Aside from his lack of qualifications, Mr. Railsback's opinion regarding infringement *vel non* is excludable because it is based on an improper methodology. The Federal Circuit has made clear that in considering infringement of a design patent, it is error to "focus on those aspects of a design which render the design different from prior art designs." ***Egyptian Goddess***, 543 F.3d at 677.  Reliance on such a "point of novelty" perspective can detract from proper consideration of what an ordinary observer would perceive:

> The attention of the court may therefore be focused on whether the accused design has appropriated a single specified feature of the claimed design, rather than on the proper inquiry, i.e., whether the accused design has appropriated the claimed design as a whole.  In addition, the more novel the design, and the more points of novelty that are identified, the more opportunities there are for a defendant to argue that its design does not infringe because it does not copy all of the points of novelty, even though it may copy most of them and even though it may give the overall appearance of being identical to the claimed design.

***Id.***  Thus, and although the ordinary observer test does not foreclose consideration of novel features of the claimed design, ***see id***. at 668, the focus must remain on the "similarities in the overall design, not on similarities in ornamental features in isolation," ***Amini Innovation Corp. v. Anthony California, Inc***., 439 F.3d 1365, 1371 (Fed. Cir. 2006).  "[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement," ***Payless Shoesource, Inc. v. Reebok International Ltd.***, 998 F.2d 985, 991 (Fed. Cir. 1993) (citation and internal quotation marks omitted).

Mr. Railsback's opinion contravenes this standard.  His report merely lists some 18 asserted differences between the patented design and the accused products without stating what, if any, effect these differences would have on the overall appearance of the two products to the ordinary observer.  *See Crocs, Inc.*, 598 F.3d at 1303 (noting that ordinary observer "will likely attach importance to those differences depending on the overall effect of those differences on the design").  Indeed, many of the alleged differences are stated in terms of precise mathematical ratios and measurements which seem unlikely to be within the perception or consideration of the ordinary observer.  I decline defendant's suggestion at the hearing that Mr. Railsback be permitted to offer these opinions without connecting them in any way to the relevant legal standard. Again, lacking any expertise relevant to opine as to the perspective of the ordinary purchaser, Mr. Railsback is no more qualified than the jurors to offer these observations.

For these reasons, I find and conclude that plaintiffs' motion to exclude the opinions of Mr. Railsback as to infringement *vel non* should be granted.

## 2. OBVIOUSNESS

Defendant also seeks to offer Mr. Railsback's expert opinion regarding whether the design embodied in the '780 patent was obvious in light of the prior art.  A design patent may not be obtained "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective date of the claimed invention to a person having ordinary skill in the art to

which the claimed invention pertains."  35 U.S.C. § 103.[5]  Plaintiffs challenge Mr.

Railsback's qualifications to opine as to what constitutes prior art, as well as his

methodology in evaluating the issues relevant to obviousness.  Assuming *arguendo* that

Mr. Railsback is otherwise qualified,[6] I nevertheless find that his opinion is not grounded

in a proper methodology, and therefore is inadmissible.

    "[O]bviousness *vel non* is reviewed from the viewpoint of a designer of ordinary

skill or capability in the field to which the design pertains," without the benefit of

hindsight.  ***L.A. Gear, Inc. v. Thom McAn Shoe Co.***, 988 F.2d 1117, 1124 (Fed. Cir.),

***cert. denied***, 114 S.Ct. 291 (1993) (internal citation omitted).  Nowhere in his report

does Mr. Railsback cite – much less purport to apply – this relevant standard in

reaching his conclusions regarding obviousness.  Instead, his report merely lists the

alleged prior art references and concludes, without explanation, that each demonstrates

that the idea of mounting LED lights on a flexible attachment strip was not a new design

concept in 2010.[7]

    Such conclusory opinions, which require blind acceptance of the expert's *ipse*

*dixit*, are never helpful, but particularly so in this context.  "[I]nventions in most, if not all,

---

    [5]  "Obviousness is a question of law premised on underlying findings of fact."  ***Eolas***
***Technologies Inc. v. Microsoft Corp.***, 399 F.3d 1325, 1332 (Fed. Cir. 2005), ***cert denied***, 546 U.S. 998,
126 S.Ct. 568, 163 L.Ed.2d 499 (2005).  The affirmative defense of obviousness must be proved by clear
and convincing evidence.  ***See Boehringer Ingelheim Vetmedica, Inc. v. Schering–Plough Corp.***, 320
F.3d 1339, 1353 (Fed. Cir. 2003).

    [6]  Obviousness is assessed in terms of the prior art, and thus the court must first determine the
legal issue of what constitutes the prior art.  ***Panduit Corp. v. Dennison Manufacturing Co.***, 810 F.2d
1561, 1568 (Fed. Cir.), ***cert. denied***, 107 S.Ct. 2187 (1987).  Because the court has not yet been called
on to make this determination, defendant asked Mr. Railsback to assume that certain publications and
references constituted relevant prior art and then opine as to obviousness.

    [7]  Moreover, given that the '780 patent application was submitted in December 2009, any opinion
regarding what was obvious thereafter appears to be of marginal relevance, at best.  ***See*** 35 U.S.C. § 102.

instances rely upon building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *KSR International Co. v. Teleflex Inc*., 550 U.S. 398, 418-19, 127 S.Ct. 1727, 1741, 167 L.Ed.2d 705 (2007). For this reason, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *Id.* Instead, the trier of fact must "identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *Id. See also Innogenetics*, *, N.V. v. Abbott Laboratories*, 512 F.3d 1363, 1373 (Fed. Cir. 2008) ("[T]here must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness.") (citation and internal quotation marks omitted).

Mr. Railsback's report provides nothing to assist the court or the jury in discerning such motivations. Further, the report "identifies no reason to combine the references in the manner claimed and fails to state how or why a person ordinarily skilled in the art would have found the claims . . . obvious in light of some combination of those particular references." *American Medical Systems, Inc. v. Laser*, 712 F.Supp.2d 885, 901 (D. Minn. 2010). In the absence of such explanation, the court cannot ensure that the opinion is not clouded, improperly, by hindsight. *See Innogenetics*, 512 F.3d at 1373; *American Medical Systems, Inc.*, 712 F.Supp.2d at

901.[8]

For these reasons, I find and conclude that the motion to exclude Mr. Railsback's

opinions regarding obviousness should be granted as well.

### 3.  FUNCTIONALITY

The heart of Mr. Railsback's report consists of testing he performed to measure

the illumination and visibility of defendant's accused product,[9] and his concomitant

conclusion that edge-mounted, forward-facing LED lights provided the greatest visibility

for the attachment strip used as a daytime running light.  Defendant seeks to introduce

Mr. Railsback's testimony regarding the results of this testing to establish that these two

features were functional and thus should be ignored in the infringement analysis.[10]

---

[8]  In addition, the report does not appear to have followed the two-step analysis required by prevailing precedent.  *See Apple, Inc. v. Samsung Electronics Co., Ltd.*, 678 F.3d 1314, 1329-30 (Fed. Cir. 2012) ("First, one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design.  Second, other references may be used to modify [the primary reference] to create a design that has the same overall visual appearance as the claimed design.") (internal citations and quotation marks omitted).  While the failure to identify a primary reference by that precise terminology is not necessarily fatal, *see Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1381 (Fed. Cir. 2009), the opinion lacks any indication that any one or more of the prior art references creates the same visual impression as the patent-in-suit, *see Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996) (to identify primary reference, court must "(1) discern the correct visual impression created by the patented design as a whole; and (2) determine whether there is a single reference that creates basically the same visual impression.") (internal quotation marks omitted).

[9]  Defendant fails to explain how any evidence relating to the visibility and illumination provided by *defendant's* accused product is relevant to the court's consideration of the scope of the design claimed in *plaintiffs'* patent.

[10]  In its response to the motion, defendant conceded that the expert report does not support the affirmative defense of functionality, which requires proof that the design of the '780 patent *as a whole* was dictated by its function.  *See Hupp*, 122 F.3d at 1460.  At the hearing, however, counsel for defendant insisted that defendant still intends to assert a functionality defense at the time of trial.  Assuming *arguendo* that defendant can do so without benefit of expert testimony – a conclusion that is not at all pellucid to the court – the Final Pretrial Order does not support the assertion of such a defense in any event.  (*See* **Final Pretrial Order** ¶ 3(b) at 14 (stating that defendant contends patent invalid because, *inter alia*, "its two key features are functional"), 16-17 (discussing the allegedly functional nature of edge-mounting and forward-facing LEDs), & ¶ 6(a)(1) at 21 (stating that witness will testify regarding "functionality *of the two features*") (emphasis added).)

A design patent is limited to the those aspects of a product that are "primarily ornamental." **Hupp**, 122 F.3d at 1460.   Thus, "[i]f the patented design is primarily functional rather than ornamental, the patent is invalid." **Richardson v. Stanley Works, Inc.**, 597 F.3d 1288, 1293-94 (Fed. Cir. 2010).   "However, when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article." **Id.**  It is under this latter principle – to limit the scope of the design patent claims – that defendant seeks to introduce Mr. Railsback's testimony regarding the results of his testing.

The proper construction and scope of the patent is an issue of law for the court. **See Markman v. Westview Instruments, Inc.**, 517 U.S. 370, 372, 116 S.Ct. 1384, 1387, 134 L.Ed.2d 577 (1996).  The court has construed the patent as "[t]he ornamental design for a flexible attachment strip having a plurality of forward facing LEDs, as shown and described."  (**Order Construing Disputed Patent Claims** at 4 [#42], filed October 11, 2012.)  The description of the '780 patent specifically states that "[t]he light illuminated from the LEDs is shown in broken lines for illustrative purposes only and forms no part of the claimed design." (**Plf. Motion App.**, Exh. 6.)  **See also Apple, Inc.**, 678 F.3d at 1317 (noting that use of broken lines connotes disclaimer of parts of patented design).  Given this disclaimer, the relative illuminance offered by plaintiffs' design plainly is not within the scope of what the patent claims.  Expert testimony on that issue therefore is irrelevant.

Moreover, Mr. Railsback's opinion clearly assumes that the primary (if not sole)

12

function of the flexible LED strips is to serve as daytime running lights for cars, thus making the functions of visibility and illuminance of utmost importance.  However, the '780 patent is not so limited,[11] and defendant's product itself is not marketed for that singular purpose, but instead represents that it can be "mount[ed] virtually anywhere," including vehicle interiors. (**See Plf. Reply App.**, Exh. 6 [#93], filed July 9, 2014.)  The evidence thus suggests that these products function primarily as accent lighting or vanity decoration.  There is nothing in Mr. Railsback's opinion to suggest that the LEDs must be edge-mounted and forward-facing in order to achieve that purpose, and in fact, the putative availability in the market of other configurations for flexible LED strips that serve this same purpose suggests otherwise.

Accordingly, I find that Mr. Railsback's opinions regarding the results of his visibility testing are irrelevant and properly excluded at trial.

### B.  MR. CHENG

Plaintiffs' expert, John Cheng, is the Vice President of Marketing and Product Development for Pilot Automotive, which "sells over 14,000 different products in the automotive aftermarket industry and "has become known as a leading supplier of aftermarket automotive lighting accessories."  In particular, "Pilot is the exclusive licensed distributor of products covered by the '780 patent."  (**Def. Motion App.**, Exh. 1 ¶ 2 at 2-3 [#86], filed June 2, 2014.)

Defendant challenges two aspects of Mr. Cheng's proffered expert opinion.  Both address the effect of the clear plastic coating that is part of defendant's accused product

---

[11] The figures of the patent show, *inter alia*, a design embodiment that is mounted around a car's driver- and passenger-side side mirrors.

on the ordinary observer's assessment of the overall visual impression.[12]  Specifically,

Mr. Cheng opines that,

> 20.  Based upon my inspection of the '780 patent and on my familiarity with flexible LED strip lighting products, I believe that the claimed design is not necessarily for the entire article of commerce.  For instance, manufacturers may wish to provide flexible LED lighting strips with forward facing LEDs that have a weather protective coating encasing or overlying the strip.  No aspect of the design of such coating is claimed in the '780 patent, leaving companies to choose whether and how to add the coating.

> 21.  I am of the opinion that the addition of a clear enclosure – whether silicon-based, glue or otherwise – placed on top of Marklyn's accused products does not prevent those products from infringing the '780 patent.  The clear coating included on Marklyn's accused products is something that must be added to the strip (that is, the circuit board or wiring, LEDs, black circuit board covering, and resistors) during manufacture. . . .  The clear coating is separable from the strip, and in my experience, must be specified or requested to be added to the strip during manufacture.

(*Id.*, Exh. 1 ¶¶ 20-21 at 7-8.)  Defendant claims that the first opinion goes to the legal

determination of the scope and construction of the patent, and thus is for the court to

determine.  It objects to the second because it allegedly does not describe the product

as it is actually seen during normal and intended use.

Of course, as already noted, the proper scope and construction of the patent-in-

suit is an issue of law for the court.  *Markman*, 116 S.Ct. at 1387.  Nevertheless, Mr.

---

[12]  At the hearing, defendant suggested for the first time that Mr. Cheng was not qualified to offer these opinions and that they lacked foundation.  Neither of these arguments was identified or explicated in the briefing on the motion, and thus these issues were not properly before the court for determination.  *See, e.g.*, *Vansteenkiste v. Lakeside Mall, LLC*, 2014 WL 2744172 at *8 n.9 (E.D. Mich. June 17, 2014); *White v. FedEx Corp.*, 2006 WL 618591 at *2 (N.D. Cal. Mar.13, 2006).  Moreover, neither of these assertions finds support on the record before the court.  Mr. Cheng appears eminently qualified to offer opinions regarding issues relevant to the case, and such opinions seem (in the lack of any explanation by defendant) to have adequate foundation.

Cheng accurately states the law when he acknowledges that a patented design may be separated from the product in which it is embodied and, concomitantly, that the design patent may be for less than the entire article of commerce. *See In re Zahn*, 617 F.2d 261, 267 (U.S. Ct. Customs & Patent Appeals 1980). "Proper application of the [ordinary observer] test requires that an accused design be compared to the claimed design, not to a commercial embodiment. . . .  [Where n]one of those cited features . . . is part of the claimed designs[,] . . . they may not serve as a valid basis for comparison in a design patent infringement analysis." *Payless Shoesource, Inc.*, 998 F.2d at 990.  Thus, Mr. Cheng does not seek to change the scope of the patent, but rather simply to offer an understanding, based on his knowledge of these products and the relevant market, that the addition of a clear plastic coating does not foreclose a finding of infringement of the patented design.[13]

Defendant further argues that Mr. Cheng's opinion regarding how the clear coating is applied and whether it is separable from the flexible LED strip itself is unhelpful because that is not the way the feature appears during the normal and intended use of the product.  *See Arminak & Associates, Inc. v. Saint-Gobain Calmar, Inc.*, 424 F.Supp.2d 1188, 1193 (C.D. Cal. 2006) ("The court must consider the features of the design that would be visible during normal and intended use throughout the article's entire lifetime, not only those features visible at the time of sale."), *aff'd*, 501 F.3d 1314 (Fed. Cir. 2007), *cert. denied*, 128 S.Ct. 2906 (2008) (citation and

---

[13]  Moreover, and to the extent a legal determination regarding the scope of the patent is necessary, it is clear to this court that Mr. Cheng is correct – the '780 patent plainly is for the design of the flexible LED strip itself and does not claim any material in which such strip might be encased.

internal quotation marks omitted).  This argument, however, improperly compares and conflates plaintiffs' patented *design* with defendant's *article of commerce*, rather than comparing the ornamental aspects of the two designs.  Here again, infringement still may arise where a patented design is embodied in some, but not all, of an article of commerce.  Such is the import of Mr. Cheng's challenged opinion, and thus exclusion of the opinion on this basis is not warranted.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That defendant's **Motion To Exclude Certain Opinions of John Cheng Under Rule 702** [#86], filed June 2, 2014, is **DENIED**;

2.  That plaintiffs' **Motion To Exclude Expert Opinion Testimony Under Fed. R. Civ. P. 702** [#87], filed June 2, 2014, is **GRANTED** insofar as consistent with the foregoing findings and conclusions; and

3.  That under Fed. R. Evid. 702, the proposed expert testimony of Ben Railsback of Knott Laboratories, LLC, is **EXCLUDED** to the extent set forth in this order.

Dated July 18, 2014, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge